DOROTHY A. MASON, Respondent, v. JOHN I. D. BRISTOL, Defendant, Impleaded with FRANK G. BUTLER, as Executor, etc., of THOMAS A. BUTLER, Deceased, Appellant.

First Department, February 15, 1918.

**Decedent's estate — action upon an alleged written assignment by testator to plaintiff — parol evidence insufficient to establish said assignment.**

Plaintiff alleged that the testator, a former life insurance agent, duly assigned and transferred to her by an instrument in writing all premiums due and to become due to him on certain insurance policies, but was unable to produce the writing and sought to prove the same by parol evidence. Evidence examined, and *held*, insufficient to establish a cause of action, and that the complaint should be dismissed.

APPEAL by the defendant, Frank G. Butler, as executor, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of January, 1917, upon the decision of the court after a trial at the New York Special Term.

*Robert A. Kutschbock* of counsel [*Albert B. Quencer*, attorney], for the appellant.

*James W. Osborne* of counsel [*Nathan B. Chadsey*, attorney], for the respondent.

LAUGHLIN, J.:

The appellant's testator died on the 19th day of March, 1916, leaving a last will and testament executed on the 13th day of March, 1916, which has been duly admitted to probate. The testator was the agent for the Northwestern Mutual Life Insurance Company and solicited certain insurance policies for it upon which he became entitled to a share in the renewal premiums and half annual and quarterly premiums.

The plaintiff alleged that on the 21st of February, 1916, the testator for a valuable consideration duly assigned and transferred to her by an instrument in writing, which he delivered to her, all of said premiums due and to become due to him from the defendant Bristol as the general agent in the county of New York of said company; that he gave due notice of such assignment to the defendant Bristol as did the plaintiff also and that she demanded payment of said premiums; that the appellant has also demanded payment thereof, claiming that they belong to the estate, and that the said premiums will continue for a period of about nine years and will aggregate about $4,000. Judgment for the amount of premiums now due and that plaintiff is entitled to those to become due is demanded.

The defendant Bristol appeared but interposed no defense. He paid the amount of premiums due prior to the trial into court and his counsel asked that it be adjudged who is entitled thereto and to the unpaid premiums.

The plaintiff was unable to produce any assignment and undertook to prove the assignment under which she claims by parol evidence. She testified that she received the assign-

ment at the apartment of the testator, No. 158 West Twentieth street, borough of Manhattan, New York, on the 21st day of February, 1916, and that it was in his handwriting and signed by him. On her cross-examination by counsel for appellant she testified that the testator delivered the assignment to her at that time, and no objection was interposed to her testifying to the personal transactions between her and the testator with respect thereto. She said that she last saw the assignment at the apartment of the testator on the evening of February twenty-fourth, at which time she claims to have delivered it to Mr. Quencer, the attorney for the appellant, to keep for her. She stated the contents of the assignment from memory as follows:

" 158 West 20th Street,

" New York City, *February* 21*st*, 1916.

" To John I. D. Bristol, manager of the Northwestern Mutual Life Insurance Company. By request of my late wife, Carrie Butler, I give to my sister-in-law, Dorothy Mason, all my renewals as well as quarter and half-annual premiums in the Northwestern Mutual Life Insurance Company.

" (Signed) ·THOMAS BUTLER."

She also testified that on the day the assignment was delivered to her by the testator she accompanied him to the office of the insurance company and that he took the assignment to Mr. Hering, who was the office manager for Mr. Bristol, but later on she admitted that she did not accompany the testator into the office and did not see it so exhibited. She also says that she took it the same day to Mr. Merrill, an attorney, who was called as a witness by the plaintiff and testified that she showed him a paper some time in the month of February, that year, and that he thought he read it but not very thoroughly and could not give the contents, and could not testify to what it was but that he thought, and was very sure, that it was an assignment and that he gave her some advice about it. Plaintiff testified that she then went to the residence of her brother, Mr. Agan, in New Jersey and showed the assignment to him and to his wife, and the same day called on a friend, Mrs. Blanckencie, where she remained all night and showed her the assignment. Her brother was

not called but his wife testified that plaintiff showed her the assignment; that she knew the handwriting of the testator and that the body of the assignment and the signature were in his handwriting, and she assumed to give the contents substantially the same as did the plaintiff. The testimony of Mrs. Blanckencie is to the same effect. It appears that Mr. Quencer had had business relations with and was counsel for the testator. The plaintiff further testified that on the twenty-fourth of February she called on Mr. Quencer at his office and showed him the assignment; that he examined it and said that the signature thereto was that of the testator; and that she told him that the testator had made two papers, " a will to his brother and sister," Fred and Fannie, " and a paper to me," and that she delivered both papers to him, and informed him that she received the will from the testator, and that she thought, but was not sure, that the will, which was in the handwriting of the testator, was not signed, and that she left both papers with him. The testimony of the plaintiff does not otherwise disclose the purpose of her call on Mr. Quencer or for what purpose she left the papers with him, and she denied that she consulted him with respect to the validity of the will or requested him to prepare a valid will or to call on the testator or informed him that the testator was seriously ill, although she admits that she said that he had a cold and she admits that he said he would come to the testator's apartment that evening. Mr. Quencer, called by appellant, testified that plaintiff called on him and asked him to examine a will which she showed him, and to advise her with respect to its validity; that it was in the handwriting of the testator and signed by him, but not witnessed and that he advised her that it was not properly executed; that she showed him no assignment and only exhibited the one paper to him, and that in the 3d clause of the will as drawn by the testator he gave to the plaintiff his renewal premiums in the Northwestern Mutual Life Insurance Company; that the plaintiff then asked him to draw a will in proper form and to call at the testator's apartment as he was very ill; that he was unable to go then but promised to go that evening; and that she left the will as prepared by the testator and from it he prepared a will in proper form to the same effect,

and called on the testator that night taking with him the will as previously prepared by the testator and the draft of the will which he had prepared.

There is a serious conflict in the testimony with respect to what occurred that evening after Mr. Quencer called at the apartment of the testator. The testator and his brother Frederick and the plaintiff were there and the appellant, who resided in Philadelphia, came about the time Mr. Quencer arrived. The testimony of the plaintiff is to the effect that she, unobserved by the others, asked Mr. Quencer for her assignment, referring to it, however, as her *paper*, and that he gave it to her and that she put it in her shirt waist; that she then in the hearing of the others asked him for her *papers* which she had left with him that afternoon and that in response to this inquiry he delivered to her the will prepared by the testator; that she then stepped into the hallway and was followed by Frederick, and she ran out into the street and he followed her; that she, evidently inferring that he saw the second paper delivered to her and wanted it, left the *will* on a barrel and that he picked it up but continued to follow her; that she ran into a restaurant and put the assignment in her stocking and was ordered out of the restaurant and after leaving she asked for protection and a stranger accompanied her back to the apartment of the testator whereupon Frank Butler stated that unless she gave up the paper he would call an officer and said that it was " no good," and that she, after stating that she desired to keep it as a matter of sentiment and to show that the testator " meant what was right," delivered the paper, which she says was the assignment, to Mr. Quencer with the request that he keep it for her and that he took it and put it in his pocket, and that she had not seen it since. She does not claim that it had been referred to as an assignment on that occasion and it is to be inferred even from her own testimony that the others, including the testator, understood it to be the will, and the two brothers and Quencer so testified. Quencer consistently maintained that he did not have any assignment or bring it with him or deliver it to the plaintiff on that occasion but he conceded that at her request he did deliver to her the will prepared by the testator, and his testimony and that of the two brothers of the testator

is to the effect that the controversy was over and the discussion was concerning that will which the testator declared was invalid owing to the fact that it was not properly executed; and Frederick Butler denied that he saw plaintiff leave any paper on a barrel or that he picked up a paper as she claimed. Their testimony also indicates that the testator was incensed over the fact that the plaintiff attempted to take and retain possession of the will, and that Quencer immediately delivered to the testator the paper which the plaintiff delivered to him. The appellant further testified that the next morning the testator exhibited to him the paper which the plaintiff had so delivered to Quencer the evening before and, in effect, asked his advice as to what should be done with it and that he read it and advised the testator that as it had no value it might as well be destroyed, and that the testator then tore it up. He says that the contents of that paper were the same as stated by Quencer. The plaintiff and her sister-in-law, who had assumed to give the contents of the assignment, testified with respect to an interview between plaintiff and Quencer over the telephone. The sister-in-law fixed the time as the morning after Quencer had so called on the testator. She did not know Quencer's voice then but claimed to be able to identify it on hearing it some time later. They both say that the telephone was so manipulated that they both heard the conversation; that the plaintiff requested Quencer to redeliver to her the paper she delivered to him at the testator's apartment, and that at first he denied that she delivered any paper to him and then asked her if she did not remember that she told him to give it to the testator and finally said that he must have destroyed it, but admitted that he knew the contents of it " substantially." Quencer denied this alleged telephonic interview. On the 14th of July, 1916, some four months after the death of the testator, plaintiff wrote Quencer requesting the return of the paper that had been taken from her by violence on the evening to which reference has been made. He replied next day stating that it was not in his possession and that he had not seen it since that night when he returned it to her and that the papers of the testator were presumably in the possession of the executor. It is significant that in this letter to Quencer the plaintiff did not

refer to the paper as an *assignment* but merely as the *paper* which had been forcibly taken from her. The plaintiff also wrote the executor on the 18th of July, 1916, demanding the return of the paper which she claimed had been taken from her by duress on said occasion, which paper, she stated in her letter to the executor, gave her the renewal premiums in question; but it is likewise significant with respect to that letter that it did not state whether the paper was an assignment or a will, and it is conceded by the appellant that the will prepared by the testator did contain a provision giving the plaintiff those renewal premiums. The plaintiff also testified with respect to an interview with Mr. Hering, who represented Bristol, at which she claims he admitted that the testator had been there with an assignment but that he did not recollect whether it was in typewriting or handwriting, and that he had advised the testator that if he gave it away that plaintiff could collect the renewals. Mr. Hering testified that he never saw any assignment to the plaintiff and that he so told her when she called on him but that he did recollect and informed her that the testator exhibited an unexecuted, typewritten assignment of the renewals to a sister in England, and that he advised the testator that if he signed that assignment, whether he delivered it or not, the company would not pay the premiums to him. The plaintiff admitted that on the 28th of March, 1916, nine days after the testator's death, she wrote the appellant in reply to a letter from him evidently answering a request on her part for twenty dollars, stating that he could pay her that amount or more " in part payment " of her *legacy* and that in view of the fact that there would be some delay in probating the will she requested that he let her have fifty dollars on account of her legacy. In answer to an inquiry by the court as to why when she claimed the money under an assignment she asked for a payment on account of the legacy she replied that she thought if she asked for it under the assignment he would not give her anything, and that her attorney advised her " the will had nothing to do with the assignment." She did not, however, call her attorney to corroborate her with respect to this. When the testator made his will, some three weeks after the evening Quencer called, instead of leaving all his interest in the renewal premiums

of said company to plaintiff, he only left her a legacy of two hundred dollars payable from them as already stated.

We are of opinion that the plaintiff did not establish a cause of action by a fair preponderance of the evidence and that the evidence satisfactorily shows that there was no written assignment of these premiums by the testator to the plaintiff. The only disinterested testimony tending to sustain the plaintiff is that of Mr. Merrill who was strongly of the impression that the paper the plaintiff exhibited to him was an assignment, but he had no definite recollection with respect to the contents of the paper and did not even remember whether it was signed. It may well be that the paper to which Mr. Merrill and the other witnesses referred as an assignment was the will in the handwriting of the testator which did contain a paragraph giving her these renewal premiums, and not having been executed in the form of a will very likely it had the appearance of an assignment. She does not say when or for what purpose she obtained the will from the testator. In our opinion the testimony of Mr. Quencer is, in the circumstances, highly probable and should be accepted. It does not appear that he had any interest in the matter at the time the plaintiff called on him and the only possible interest he could have had when he testified is as attorney for the appellant. His testimony is irreconcilable with the plaintiff's theory. It is highly probable that the plaintiff called on Mr. Quencer, as he states, to ascertain whether or not the will prepared by the testator giving her these renewal premiums was validly executed and that on being advised that it was not she requested him to prepare a will in proper form to the same effect. His call at the testator's apartment that night can only be accounted for on that theory. It is evident that in the meantime something had occurred which led the plaintiff to believe that the testator would not, in the presence of his two brothers, execute the will which she had requested Mr. Quencer to prepare and bring there for execution and that she deemed it to her interest to retain possession of the will in the handwriting of and signed by the testator which accounts for the controversy on that occasion. If she had an assignment there was no reason for leaving it with Quencer at his office or delivering it up to him at the testator's apartment and

it is not probable that she would have done so, at least not without protesting that it was an assignment which the testator had voluntarily made and delivered to her. Moreover, if as the plaintiff now claims, there had been a formal written assignment to her of these premiums and also a will, both of which were the subject of the controversy on the occasion when Quencer called at the testator's apartment, it is probable that in writing the executor she would have described the paper, the possession of which she demanded, as the assignment, or in some manner have distinguished it from the will, whereas both letters are entirely consistent with there having been only one paper, namely, the will containing a provision giving her these renewal premiums. Furthermore, the plaintiff's request for part of the legacy under the will is wholly inconsistent with the existence of an assignment giving her the entire amount of the same fund.

We are of opinion, therefore, that the court erred in determining the facts and that the findings and legal conclusions inconsistent with these views should be reversed and appropriate findings and conclusions in accordance with our views made and embodied in the decision to be entered on the appeal which should specify by numbers the findings and conclusions that are reversed, and that the judgment should be reversed, with costs, and the complaint dismissed, with costs.

SCOTT, DOWLING, SMITH and DAVIS, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs. Order to be settled on notice.